CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/25/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **KIMBERLEY A. RAMSEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:17-cv-24 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kimberley A. Ramsey ("Ramsey") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Ramsey alleges that the ALJ erred by failing to: (1) find that Ramsey's Crohn's disease and rectovaginal fistula met or equaled a listing; and (2) properly determine her RFC. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Ramsey's Motion for Summary Judgment (Dkt. No. 18) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 25).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Ramsey failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Ramsey filed for DIB on August 9, 2012, claiming that her disability began on February 13, 2010, due to Crohn's disease, spinal damage, muscle spasms, anxiety, depression, heart condition, chronic pain, and high cholesterol.[2] R. 12, 153, 156. Ramsey's date last insured was March 31, 2012. R. 153. Thus, she must show that her disability began on or before March 31, 2012 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Ramsey's applications at the initial and reconsideration levels of administrative review. R. 58–70, 72–84. On May 12, 2015, ALJ Marc Mates held a hearing to consider Ramsey's claims for DIB. R. 30–57. Counsel represented Ramsey at the hearing, which included testimony from vocational expert Jan D. Howard-Reed.

On June 19, 2015, the ALJ entered his decision analyzing Ramsey's claims under the familiar five-step process[3] and denying her claim for benefits. R. 12–24. The ALJ found that

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Ramsey was 45 years old on the date on her date last insured, making her a "younger person" under the Act. R. 58.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the

Ramsey was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease and Crohn's disease with a rectovaginal fistula.[4] R. 14. The ALJ determined that these impairments, either individually or in combination, did not meet or equal a listed impairment, specifically considering listings 1.04 and 5.06. R. 16. The ALJ concluded that, through the date last insured, Ramsey retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17. Specifically, the ALJ found that Ramsey must never climb ladders, ropes, or scaffolds, and can only occasionally perform other postural activities including balancing and stooping. Ramsey must avoid concentrated exposure to temperature extremes, vibration, and hazards such as unprotected heights and dangerous, moving machinery. Id. Ramsey also must have an opportunity to alternate between sitting and standing as needed, while remaining on task. Id.

The ALJ determined that Ramsey was unable to perform her past relevant work as an equine technician, construction laborer, sales associate, and painter, but she could perform other jobs that exist in significant numbers in the national economy, such as packer and inspector. R. 23. Thus, the ALJ concluded that Ramsey was not disabled. R. 23–24. Ramsey appealed the ALJ's decision and the Appeals Council denied her request for review on January 17, 2017. R. 1–3.

---

requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] The ALJ also determined that Ramsey's cardiac dysrhythmias, bladder prolapse, anxiety/depressive disorder, and shoulder pain were non-severe impairments. R. 14–15.

## ANALYSIS

Ramsey alleges that the ALJ erred by failing to: (1) find that Ramsey's Crohn's disease and rectovaginal fistula met or equaled listing 5.06(B)(4); and (2) properly determine her RFC.

### A. Relevant Medical History

(1) Degenerative Disc Disease

Ramsey was diagnosed with lumbar radiculopathy with positive neurologic changes in February 2010 and an MRI showed a large L4-5 herniated nucleus pulposus, which required surgery. R. 342–43. Neurosurgeon Morris E. McCrary, III, M.D. performed a bilateral L4–5 partial hemilaminectomy and foraminotomy for excision of herniated nucleus pulposus and discectomy on February 17, 2010. R. 327–29. At follow up visits in March and April 2010, Ramsey indicated pain relief following the surgery and was released by Dr. McCrary to return "to more full and usual activities." R. 323, 322. Ramsey returned to Dr. McCrary in October 2011, complaining of recurrent episodes of back pain, particularly when cleaning bathrooms or working with her horses. R. 316. On examination, she walked independently, had negative straight leg raising, good sensation, symmetric reflexes, and negative Babinski reflex. R. 316.

(2) Crohn's Disease and Rectovaginal Fistual

Ramsey underwent a colonoscopy in May 2010 which showed Crohn's disease and a rectovaginal fistula. R. 470, 472–73. In August and November 2010, Ramsey reported improved cramping and diarrhea since beginning medication. R. 424, 282–84. However, at the November appointment she reported liquid stool draining from her vagina "at least twice weekly" as a result of the rectovaginal fistula. R. 282–84. On November 30, 2010, Ramsey underwent surgery, rectal advancement flap with repair of rectovaginal fistula. R. 287–88. At a follow up appointment in March 2011, Ramsey indicated she was doing well, with no abdominal pain or

diarrhea, with her rectovaginal fistula minimally symptomatic, and her doctor stated her Crohn's disease and rectovaginal fistula were well-controlled by her medication.[5] R. 421–23.

However, at a follow up appointment in September 2012, six months after her date last insured of March 31, 2012, Ramsey reported that the rectovaginal fistula "has continued to be a problem for her, quite a nuisance, with drainage" as well as occasional abdominal pain, but well controlled bowel habits. R. 476. Her doctor indicated that the fistula repair would likely fail, and noted that Ramsey was considering a surgical referral to Duke University Medical Center. R. 479. Ramsey testified at the hearing that her fistula repair failed three days after her surgery. R. 50. In May 2013, over a year after her date last insured, Ramsey was treated at Duke University Medical Center, and the doctor's report indicates ongoing problems related to her rectovaginal fistula, including needing to wear 2 to 3 pads a day, and passing a small amount of fecal matter into the vagina with every bowel movement. R. 504. In October 2013, Ramsey had bladder prolapse surgery. R. 533–47.

## B. Listing 5.06(B)[6]

Under listing 5.06(B), Ramsey is entitled to a conclusive presumption of disability if she can show a diagnosis of inflammatory bowel disease ("IBD") documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings and *two of the following*, despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:

(1) Anemia with hemoglobin of less than 10.0g/dL, present on at least two evaluations at least 60 days apart; or

---

[5] Ramsey had been prescribed Asacol for her Crohn's disease. R. 423.

[6] In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.

5

> (2) Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
> (3) Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> (4) Perineal disease with a draining abscess or fistula, with pain that is not completely controlled with prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> (5) Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
> (6) Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 5.06.

Ramsey argues that the ALJ erred by finding that her Crohn's disease and rectovaginal fistula did not meet or equal listing 5.06(B)(4), stating that the "evidence indicates the existence of the fistula, pain, [pain medication,] and surgeries. Pl's. Br. at 11, Dkt. No. 17. However, as correctly argued by the Commissioner, Ramsey fails to acknowledge that to meet listing 5.06(B) she must satisfy two of the six listed elements—not just element four. Ramsey does not argue that she meets any of the other elements, such as anemia, low serum albumin, an abdominal mass, involuntary weight loss of at least ten percent from baseline, or the need for supplemental daily enteral nutrition. Likewise, Ramsey points to nothing in the record showing that she satisfied two of the six elements in Listing 5.06(B).

Here, the State Disability Determination Service physicians concluded that Ramsey did not meet a listing and no treating or examining doctor identified signs or findings that meet a listing. The ALJ concluded that "[f]ollowing independent review of the medical record" Ramsey did not meet or equal a Listing. R. 16. The ALJ continued, specifically evaluating Ramsey's Crohn's disease under listing 5.06, acknowledging that the "record reveals Crohn's disease,

6

documented by medically acceptable imaging" but finding that there is no evidence sufficient to meet or equal the requirements of listing 5.06(A)[7] or (B). The ALJ wrote, "There is [] no evidence of **two** of the [six elements in listing 5.06(B)] occurring within the same consecutive six month period, as required by the B section of this listing . . . ." Id. (emphasis in original). In support, the ALJ noted that, "while [Ramsey] had a fistula," she reported she was feeling great in December 2010, doing well in March 2011 with no abdominal pain and with a minimally symptomatic fistula, and only occasional right-sided abdominal pain, in September 2012. R. 16–17. The ALJ included that "the narcotic pain medication that [Ramsey] was prescribed, was not for pain from her fistula, but rather pain from her musculoskeletal impairments." R. 17.

The ALJ properly found that Ramsey's Crohn's disease and related symptoms, including her rectovaginal fistula, did not meet or equal the requirements of Listing 5.06B. This is not a case where the ALJ failed to consider a listing. Rather, the ALJ reviewed the evidence in the record, and determined that although Ramsey's Crohn's disease with a rectovaginal fistula was a severe impairment, her impairments individually or combined did not meet Listing 5.06B or any other listing. R. 16–17. It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. Because Ramsey does not point to any medical evidence beyond perineal disease with fistula (element four) that supports listing 5.06(B), she has not shown that each of the required symptoms was present. See Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not

---

[7] A plaintiff is entitled to a conclusive presumption of disability under listing 5.06(A) if she can show a diagnosis of IBD and obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 5.06.

qualify."). Element four alone simply does not satisfy the requirements of listing 5.06(B). Thus, the medical evidence does not show that Ramsey's impairment met or equaled listing 5.06(B), the ALJ did not err in determining Ramsey's condition did not meet the requirements of the listing, and remand is not warranted on this ground.

### (3) RFC

Ramsey asserts that the ALJ's RFC findings are not supported by substantial evidence, arguing that the "ALJ failed to consider reasonable limitations for someone who is leaking from a rectovaginal [fistula]." Pl.'s Br. at 16–17. According to Ramsey, this resulted in a failure to present a proper hypothetical to the vocational expert. This argument amounts to a disagreement with the ALJ's RFC determination, essentially asking the court to reweigh the evidence.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). However, in Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence

8

in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Ramsey assertion that the ALJ did not address her testimony and record statements regarding her symptoms related to her rectovaginal fistula is not well taken. The ALJ referenced in his opinion Ramsey's testimony regarding her Crohn's disease and fistula, including associated leakage, gas and bloating, need to use the restroom 5-6 times per day, and need to wear sanitary napkins and carry a change of underwear. R. 17–18, 39, 50. However, the ALJ did not find Ramsey completely credible regarding the severity of her symptoms, noting that her treatment record did not support her allegations. The ALJ discussed Ramsey's treatment records in detail, including those related to her Crohn's disease and rectovaginal fistula, both before and after her date last insured.[8] R. 18–22. The ALJ wrote:

> [T]he evidence of record reveals that her Crohn's disease has been relatively stable and well controlled with medication and her rectovaginal fistula did not require significant treatment from her November 2010 surgery through her date last insured of March 31, 2012. In fact, treatment notes through her date last insured reveal [Ramsey] reported feeling 'great' in December 2010, and in April 2011, she was doing well, with no abdominal pain, one bowel movement daily, no diarrhea, mucus, or blood, and a rectovaginal fistula that was only mildly symptomatic. The evidence of record after her

---

[8] It was appropriate for the ALJ to consider Ramsey's treatment records relating to the time period after her date last insured as, while Ramsey must show that she became disabled before her date last insured to be eligible for Social Security benefits, the medical evidence after her date last insured is "not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured]." Bird v. Commissioner, 699 F.3d 337, 340 (4th Cir.2012) (citing Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir.1987)).

9

> date last insured also reveals that in September 2012, [Ramsey] reported well controlled bowel habits; she had no draining from her fistula on a well woman visit in January 2013, as well as no complaints of incontinence of stool in April 2-13; in May 2013, she reported passing [a small dime-sized] amount of stool into the vagina.

R. 21. The ALJ specifically noted that her testimony that she needed to use the restroom 5–6 times a day were not corroborated by treatment notes showing she reported only one bowel movement a day in 2011, well-controlled bowel movements in September 2012, and on average less than two per day in May 2013.[9] R. 21. Accordingly, the ALJ sufficiently explained, and the record supports, his decision not to include additional restrictions in Ramsey's RFC related to her rectovaginal fistula, including a need for frequent bathroom breaks.

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of Ramsey's medical records, Ramsey's hearing testimony, and the ALJ's conclusions. R. 17–22. I find that the ALJ's RFC findings are supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to

---

[9] The ALJ noted that Ramsey's report of 10–12 bowel movements weekly averaged out to less than 2 per day. R. 21.

this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

                                          Entered: July 25, 2018

                                          *Robert S. Ballou*

                                          Robert S. Ballou
                                          United States Magistrate Judge